[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife by complaint dated December 3, 1999 and made returnable to this court on December 28, 1999, seeking a dissolution of marriage on the grounds of irretrievable breakdown. Additionally, the plaintiff seeks sole custody of the minor children, child support, title to the marital home and any other remedy which at law or equity may appertain.
After initially first appearing pro se, the defendant subsequently appeared through counsel on April 25, 2000.
On June 6, 2001, June 7, 2001, June 8, 2001 and July 17, 2001, this matter was tried to the court having previously been claimed to the limited contested list. The parties were represented throughout the proceedings by counsel. Testimony was received from the plaintiff, the defendant, as well as other witnesses that were called by each party. From the testimony and evidence produced at the trial and after assessing the credibility of the witnesses the court finds the following to have been proven.
The parties were intermarried on September 23, 1988 at Glastonbury, Connecticut. The plaintiff and defendant have two minor children, issue of the marriage and no other minor children have been born to the plaintiff wife since the date of the marriage. Neither party is receiving any state, federal or local assistance. The parties have resided in this state for more than one year immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
Based upon a review of the exhibits as well as the testimony at trial, the court finds the following additional facts:
The plaintiff wife is 45 years old and in good health.
She is currently employed at United Health Group as an information services department programmer earning $1440.38 a week.
Ms. Timreck first started working at the Travelers Insurance Company in 1976 which was the predecessor to the United Health Group. From 1989 to 1998, as a result of her employment she earned between $50,000.00 and $60,000.00 a year. Since 1999 to the present she is earning approximately $70,000.00 a year. CT Page 12831
The plaintiff has an Associates Degree from New York College and a B.A. Degree from Central Connecticut State University.
The parties first met each other in 1985 after dating approximately three and one half years. They married in September of 1988. The parties have two children who are minors, Valerie Timreck, age eleven and Erick Timreck, age nine. Both children are residing with the plaintiff at the marital premises at 29 Lakeside Drive, Andover, Connecticut.
At the time of her marriage to the defendant, the plaintiff owned real estate at 166 Converse Avenue, Meriden, Connecticut which property was worth approximately $90,000.00 and had approximately $50,000.00 of equity in it. She also co-owned the property at 29 Lakeside Drive, Andover, Connecticut the result of the defendant quitclaiming one-haif of his interest in the property to her on July 30, 1986 prior to his marriage to the plaintiff.
In July of 1986, just prior to the defendant's transfer of said property to the plaintiff, the property was worth approximately $95,000.00 and had equity of approximately $59,000.00, the property being subject to a mortgage balance of which was approximately $36,000.00. Contemporaneously with the transfer of the property on July 30, 1986, the parties refinanced the property with the Money Store obtaining a mortgage for $47,000.00 thus reducing the equity on the property to approximately $48,000.00.
In June of 1994, the plaintiff sold her Meriden property and netted approximately $52,000.00 from the sale. She testified that she applied most of said proceeds to the existing mortgage on the Andover property. The defendant also testified that he also made financial contributions to the Andover property.
The Court finds that the Andover property is presently worth $173,000.00 and is not encumbered by a mortgage.
Additionally, at the time of her marriage, the plaintiff had several bank accounts at the Society for Savings totaling approximately $32,000.00, a Nationwide IRA in the amount of $8,371.00, IBM stock, a Northwest Mutual Life Insurance Policy, a pension interest from the Travelers Insurance Company and miscellaneous other property.
The plaintiff testified that during the marriage, her income provided the support for the entire family.
The wife gave credible testimony that her husband was verbally and CT Page 12832 physically abusive to her for years during her marriage, often in the presence of her children. As an example of her husband's abusive behavior, she gave credible evidence of an incident in November of 1999 in which her husband physically and verbally abused her resulting in her obtaining a restraining order against her husband as evidenced by plaintiff's exhibit # 33. He also videotaped her while naked in the shower and showed the videotape to her children.
The defendant husband admitted to videotaping his wife explaining that he wanted to humiliate his wife. He admitted showing that videotape to his children but said that they viewed it while he was attempting to erase the tape. The court does not find the defendant's testimony to be credible that he accidentally showed the tape to his children.
As a result of said incident, the defendant was sentenced in April of 2000 at the Superior Court in Rockville to one count of Assault in the 3d Degree in which the defendant received a one year sentence, suspended with three years probation and one count of Disorderly Conduct and sentenced to a term of ninety days, suspended with one year probation. The conditions of probation included the defendant obtaining alcohol/counseling treatment or evaluation not to use or possess alcohol, to submit to urinalysis, psychological evaluation treatment and or counseling and no unsupervised contact with his two children unless agreed to by his children's therapist and the office of adult probation.
Probation Officer Kevin Lawrence testified that Mr. Timreck has not complied with the conditions of his probation in his opinion and as such a violation of probation complaint is currently pending, in the Rockville Superior Court.
The plaintiff also gave credible testimony that the defendant became an alcoholic approximately four or five years into the marriage. Ms. Timreck provided credible evidence of the amount of significant financial resources that were drained by the defendant as a result of his passion for alcohol.
Credible testimony was given by Donald Denley, the owner of the Hungry Tiger Cafe in Manchester, Connecticut that from 1982 to November of 1998, the defendant was a regular customer at his bar. Mr. Denley testified that the defendant would typically be at his establishment Monday through Friday at lunch time, afternoons and happy hour consuming from four to eight CC's and ginger which is an alcoholic beverage.
The defendant has stipulated that the plaintiff is to have sole custody of the two minor children of the parties with no rights of visitation and the court order reflects said stipulation. CT Page 12833
The defendant is forty-six years of age. He attended the University of Connecticut from 1978 to 1980 but did not obtain a degree.
When he first met his wife in 1985, he was employed as a bouncer at the Brown Thompson and Company.
He ultimately obtained a job as a copier service technician working for Copy Tex in 1988 grossing approximately $18,000.00 a year.
He also worked from 1988 to 1990 at the Signworks working at an hourly rate.
The defendant started a business in October of 1988 known as the Copy Doctor. He testified that he agreed with his wife that he would continue the business for five years and if it was unsuccessful he would obtain employment to help support the family.
During the years 1989 to 1999, the Copy Doctor lost an average of $577.00 per year according to the income tax returns filed for said business. The defendant testified that he cannot be absolutely sure of his actual earnings as he is not sure what income has been properly reported as he often dealt in cash.
Accordingly, the defendant's business that he operated for approximately eleven years did not result in any significant financial support for his family and the responsibility for supporting the family was left to the plaintiff.
The defendant also testified that he obtained his real estate license in 1999 and was able to work for Noreen Riley Real Estate but was unable to raise the required Tri-Town Board of Realtors fee of approximately $1,000.00. As such, he was not able to work for Noreen Riley and he no longer pursued this career.
The defendant is currently employed at the Moore BCS which is a printing communications company. He is working as an operator/setup person for computerized mechanical machines. Mr. Timreck began said employment in January of 2000 earning approximately $500.00 a week.
On June 23, 2000, he purchased a Harley Davidson motorcycle for approximately $10,000.00 and agreed to pay approximately $197.00 a month to Harley Davidson Credit to finance said purchase.
As an example of the defendant's lack of priority to support his family, he did not pursue real estate employment because he couldn't CT Page 12834 raise approximately $1,000.00 but he was able to spend $10,000.00 on a motorcycle.
He then was injured in a motorcycle accident on June 23, 2000 in which he claims to have suffered a traumatic brain injury. He cannot recall what medications he is currently taking for said injury and did not provide any medical evidence to support his claim. As a result of said accident, the defendant claims to have been unable to work from June of 2000 to February of 2001. As of February 2001 to the present, he is working at a reduced schedule claiming his injury prevents him from working more hours. His June 26, 2001 financial affidavit reflects the defendant earning $278.00 per week.
Credible evidence was presented that for the period of January 1, 2001 to April 24, 2001 he earned $3139.00 or approximately $220.00 a week as a result of his employment.at Moore BCS. In addition: the defendant did receive some disability payments as a result of his injury and he may be pursuing additional disability payments.
The defendant gave testimony that he had an alcohol problem in 1996-1997 and that he addressed it with his doctor.
He denies that he spent large sums on alcohol and attributes the documentary evidence of checks and charges to package stores and bars to the purchase of nonalcoholic items as well as check cashing privileges. The court does not find his testimony to be credible.
The defendant claims to have been physically and emotionally abused by his wife. He claims that he received black eyes from his wife. He also claims that in July of 1997 he caught his wife having inappropriate sexual activity with the five year old son of the parties. He told his sister of the alleged impropriety which eventually resulted in DCF investigating the matter. He testified that his wife promised him that she would not do it again. The court does not find his testimony to be credible.
Upon cross examination of the defendant's assertion, a statement of the defendant dated August 18, 1997 to the police which was entered as a full exhibit (plaintiff's exhibit # 63) was presented to the defendant. In said statement, the defendant stated that his wife did not have inappropriate sexual activity with his son, that it was a big misunderstanding as a result of marital difficulties.
When questioned by the plaintiff's attorney about the inconsistency of Mr. Timreck with his testimony before the court and the statement of August 18, 1997 Mr. Timreck took the 5th amendment and did not testify on CT Page 12835 the matter. The court does not find any part of Mr. Timreck's allegations of sexual misconduct by the plaintiff credible.
As to the issue of the defendant's earning capacity, it is well settled law in Connecticut that a court may base financial awards on earning capacity rather than actual earned income of the parties. In Bleue v.Bleue, 59 Conn. App. 167, 170 (2000), the Appellate Court stated.
 "While there is no fixed standard for the determination of an individual's earning capacity: it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations." (Citations omitted: internal quotation marks omitted).
The defendant is currently earning approximately $278.00 a week according to his financial affidavit working part time. He had previously been earning approximately $500.00 a week while working full time for his current employer. While he was unable to make a living while self employed, he had been earning $18,000.00 a year as a copier service technician.
The court finds that the defendant has a skill in working in the copier servicing business having spent over ten years in this field. The court also does not find that the defendant is presently disabled to the extent that he is unable to work. The defendant did not present any medical evidence on his behalf and is lacking credibility in his testimony. Accordingly, the court finds that the defendant has an earning capacity of $400.00 per week.
The defendant testified that he has not paid the plaintiff any child support since the inception of the dissolution of marriage action reasoning that if he sent her money it would violate the restraining order against him. He also testified that no one asked him to pay any child support.
The parties have two minor children ages nine and eleven who are presently residing with the plaintiff in the family home in Andover, CT Page 12836 Connecticut.
While the defendant has provided assistance in caring for his children during the marriage, it is undisputed that since the parties separated in November of 1999, the plaintiff has been the sole caretaker of the children. The defendant cannot remember the last time he visited with his children but believes he may have had a visit with them supervised at AMPS sometime before June 2000.
The defendant has acknowledged his poor relationship with his children and has agreed that his wife is to have sole custody of the minor children and that he is to have no rights of visitation. The court order reflects this agreement.
The evidence supports and the court so finds through credible testimony that the responsibility for the breakdown of the marriage lies with the defendant. His violence and emotional abuse towards the plaintiff, his misuse of alcohol, his criminal convictions, his poor relationship with his children, and failure to financially support his family all clearly were the cause of the breakdown of the marriage. During the course of the marriage the defendant did not preserve or enhance the marital assets.
Unfortunately, the defendant has caused great harm to be done his wife and children as a result of his actions and as a result, the plaintiff has been given the sole responsibility of providing for the financial support of her entire family as well as the emotional nurturing of her two young children. The plaintiff's efforts resulted in the preservation and enhancement of the significant marital assets.
After taking into consideration all of the criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84 and applying the same to the evidence, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
2. The plaintiff shall have sole custody of the two minor children of the marriage with no rights of visitation in the defendant.
3. The defendant shall make child support payments to the plaintiff for the minor children in the amount of $37.50 per week for each child for a total support order of $75.00 per week for the two children until said child reaches 18 years of age. However, if upon reaching the age of 18 years the child remains a full time high school student the defendant shall continue to make child support payments until the child reaches the age of 19 years or leaves high school whichever CT Page 12837 shall first occur. The court finds that the application of the support guidelines would be inequitable under the circumstances and approves the deviation from the child support guidelines due to the division of assets and liabilities of the parties and the defendant's earning capacity.
4. The plaintiff shall be entitled to claim the minor child Erick Alan Timreck as an exemption on her state and federal tax returns and the defendant shall be entitled to claim the minor child Valerie Elizabeth Timreck as an exemption on his state and federal tax returns.
5. The plaintiff shall provide medical insurance for the minor children through her existing medical insurance policy or its equivalent. The defendant shall be entitled to medical insurance under COBRA at his own expense for the maximum period allowed by law.
6. The plaintiff will be responsible for 80% of any and all unreimbursed medical, dental, optical, pharmaceutical, orthodontic, psychiatric or psychological counseling, and prescription expenses for the benefit of the minor children. The defendant shall be responsible for the remaining 20% of said expenses. The court finds that the application of the support guidelines would be inequitable or inappropriate under the circumstances and approves this deviation due to the division of assets and liabilities of the parties and the defendant's earning capacity.
7. The defendant shall convey to the plaintiff by quitclaim deed any and all interest he may have in the property located at 29 Lakeside Drive, Andover, Connecticut within thirty days of this order. After taking into consideration the defendant's prior ownership of the marital property, the financial accounts by the parties, the payments towards the mortgage and taxes made during the marriage, all of the expenditure of funds by the parties during the marriage, as well as the statutory criteria relating to the distribution of marital assets, the court orders the plaintiff to pay to the defendant the sum of $50,000.00 as a property settlement relating to his share of the equity in the real estate payable upon the first occurrence of any of the following events:
a. the sale of the premises.
b. the death of the plaintiff.
 c. when the youngest child of the parties attains the age of 19 or graduates from high school, whichever first occurs.
CT Page 12838
 d. when there are no minor children of the parties using the premises as their primary residence.
e. September 1, 2111.
 The plaintiff shall execute a mortgage note with no interest and deed in favor of the defendant to secure said debt, to be executed contemporaneously with the receipt of the quitclaim deed from the defendant. The plaintiff shall hold the defendant harmless from the taxes and insurance on said property.
8. The plaintiff shall have ownership of the 2000 Volvo automobile free and clear of any claims of the defendant.
9. The defendant shall have ownership of the 2000 Harley Davidson motorcycle and the 1990 Toyota Camry automobile free and clear of any claims of the plaintiff and the defendant shall assume and hold the plaintiff harmless from the outstanding loans on said vehicles.
10. Each party shall retain possession of and is entitled to all household goods, furnishings and possessions now under their possession and control.
11. Except as specifically otherwise ordered, each party shall be responsible for the debts and liabilities set out in their respective financial affidavit and hold the other party harmless therefrom.
12. The plaintiff shall retain her ownership in the following property free and clear of any interest of the defendant.
a. United Health and Vanguard securities.
b. Citicorp, Coke and IBM securities.
c. Kemper and Lerhaighpi account.
d. Sovereign checking account.
e. Sovereign savings account.
f. Northwestern Insurance policy including the cash value of said policy.
g. Nationwide IRA
h. Second IRA as listed on plaintiff's financial affidavit. CT Page 12839
 i. Traveler's pension as listed in paragraph 4-H of the plaintiff's financial affidavit.
13. The defendant shall retain his ownership of the following property free and clear of any interest of the plaintiff.
a. Savings Bank of Manchester checking account.
b. Savings Bank of Manchester savings account.
14. The plaintiff shall transfer to the defendant via a QDRO from her 401 (k) ESOP Plan the sum of $50,000.00 within thirty days of this order, said 401(k) ESOP Plan had an approximate value at the date of trial of $220,655.00.
15. The plaintiff shall transfer to the defendant the sum of $22,500.00 within thirty days of this order as a lump sum property settlement.
16. Neither party is awarded alimony.
17. The plaintiff shall remain the custodian of the children's funds as previously gifted by their maternal grandmother.
18. Each party shall be responsible for his and her own attorney's fees and costs.
19. Plaintiff's counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
20. A wage execution may issue for the support order as part of this Judgment.
Edward C. Graziani Superior Court Judge